UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 06, 2021

SEAN F. McAVOY, CLERK

| | |
|---|---|
| ELISABETH S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 1:20-CV-03122-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 18, 19. Attorney D. James Tree represents Elisabeth S. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income on March 7, 2016, alleging disability since January 27, 2014,[2] due to Schizophrenia. Tr. 89, 255. The application was denied initially and upon reconsideration. Tr. 88-99, 100-111. Administrative Law Judge (ALJ) M.J. Adams held a video hearing on October 17, 2017, Tr. 62-87, and issued an unfavorable decision on April 25, 2018. Tr. 112-129. Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 211-214. In an order dated March 22, 2019, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ.[3] Tr. 130-134. The same ALJ held a second hearing on September 18, 2019, Tr. 1495-1527. The ALJ issued a second unfavorable decision dated September 30, 2019. Tr. 32-56. On October 8, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 252-254. The Appeals Council denied the request for review on July 9, 2020. Tr. 1-7. The ALJ's September 30, 2019, decision is the final

---

[2] Plaintiff later amended the alleged onset date to the protected filing date, March 7, 2016, for administrative purposes. Tr. 66, 115.

[3] The Appeals Council found that the RFC was not supported by substantial evidence, and that the decision mischaracterized evidence by showing significant improvement in psychotic symptoms due to compliance with medication, when treatment notes not discussed in the decision reflected the claimant still often reported auditory and visual hallucinations and exhibited delusional behavior during a time when she was compliant with her medications and there was no evidence she was engaging in substance abuse. Tr. 130-134.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 10, 2020. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was 26 years old on the application date. Tr. 47. Plaintiff has a 10th grade education and does not have a GED. Tr. 1499. Plaintiff has a limited work history and last worked sorting fruit in 2008. Tr. 69, 271, 281-82. Plaintiff's mental health diagnoses include unspecified schizophrenia or other psychotic disorder, and substance use disorder(s). Tr. 37, 384, 388-89, 391, 451, 458, 1106. Treatment has included psychiatric hospitalization, counseling, and antipsychotic medications including Risperdal, Abilify, and Invega (monthly injection), and antidepressants. Tr. 422, 504, 530. Plaintiff has a long history of substance abuse beginning at age 14 or 15 and was first diagnosed with amphetamine dependence in 2009. Tr. 383, 694. Plaintiff reported she was three years sober in 2019. Tr. 355, 1229.

Plaintiff identifies as transgender and has legally changed her name to Elisabeth, and at the 2019 hearing she reported she prefers she/her pronouns. Tr. 66-67.[4]

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

---

[4] The Court uses Plaintiff's preferred pronoun, but portions of the ALJ decision and some medical records refer to Plaintiff as "he," and these will be quoted as they appear in the record.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On September 30, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 32-49.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 37.

At step two, the ALJ determined Plaintiff had the following severe impairments: unspecified schizophrenia and substance use disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 38.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> she can understand, remember and carry out simple instructions; she can exercise simple workplace judgement; she can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetitions; she can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required; she can deal with occasional changes in the work environment; and she can do work that requires no interaction with the general public to perform the work tasks but this does not preclude a working environment where the public is present.

Tr. 39.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 47.

At step five the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform,

specifically identifying the representative occupations of kitchen helper, laundry worker, and industrial cleaner. Tr. 48.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. Tr. 49.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) improperly evaluating medical opinion evidence (2) improperly rejecting Plaintiff's subjective complaints.

## DISCUSSION

**1.     Medical opinions**

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence. ECF No. 18 at 2. Plaintiff argues the ALJ improperly rejected the opinions from Dr. R.A. Cline, Psy.D and Brittany Rumsey, MSW. *Id.* at 9-13

When a treating or examining physician's opinion is contradicted by another physician, the ALJ must offer "specific and legitimate" reasons to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ may discount the opinion of an "other source," such as a MSW, if they provide "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

    a.    Dr. Cline

Plaintiff attended two consultative psychological exams with Dr. Cline for Washington state Department of Social and Health Services (DSHS), the first on March 22, 2016, and the second on December 20, 2017. Tr. 382-386, 1104-1112.

          i.    *Dr. Cline's March 2016 evaluation*

At the March 2016 exam, Dr. Cline administered a clinical interview and mental status exam and diagnosed Plaintiff with unspecified schizophrenia spectrum disorder and other psychotic disorder NOS (primary schizophrenia vs. substance induced psychosis); methamphetamine use disorder, marked, in early full remission; cocaine use disorder, moderate in early full remission; and alcohol use disorder, moderate, in early full remission. Tr. 383-84. Dr. Cline opined Plaintiff was overall markedly impaired and had multiple moderate and marked limitations in specific areas of work-related functioning.[5] Tr. 384-85.

The ALJ gave Dr. Cline's 2016 opinion little weight, because Dr. Cline reviewed no records and relied solely on Plaintiff's self-report "which the record shows is unreliable." Tr. 45. The ALJ found Dr. Cline "provides no rational basis for marked limitations particularly in light of the claimant's activities of daily living, which include tending to her personal care needs and managing her

---

[5] A "marked" severity rating is defined on the DSHS evaluation form as "mean[ing] a very significant limitation in the ability to perform one or more basic work activity," and a "moderate" severity rating is defined as "significant limits on the ability to perform one or more basic work activity." *Id.*

finances." The ALJ concluded "Dr. Cline suggests that the claimant is not a malingerer. However, the claimant misrepresented her alcohol use to Dr. Cline as noted." Tr. 45.

Plaintiff argues the ALJ was incorrect to give Dr. Cline's 2016 opinion little weight, because Dr. Cline examined Plaintiff, provided her own observations and diagnoses, and administered a mental status exam, all of which entailed clinical observations. ECF No. 18 at 14. Plaintiff argues the ALJ did not point to any medical records that contradict Dr. Cline's opinion, and that there are significant differences between tending to personal care and sustaining activity over a normal workday on an ongoing, appropriate, and independent basis. ECF No. 18 at 13-15.

Defendant argues the ALJ reasonably rejected Dr. Cline's 2016 opinion because Dr. Cline did not review any records, several results of a mental status examination were normal, and the others were just a recapitulation of Plaintiff's statements about auditory hallucinations. ECF No. 19 at 7-8. Defendant argues that because she had not reviewed any records, Dr. Cline was not aware such symptoms improved with treatment. *Id.*

The Court finds the ALJ erred by failing to provide "specific and legitimate reasons" to reject Dr. Cline's opinions. While an ALJ may discount a medical opinion that is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible," *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008), there must be some evidentiary basis for such a conclusion. *Ghanim v. Colvin*, 763 F.3d 154, 1162 (9th Cir. 2014).

Dr. Cline's 2016 opinion was based on her examination, interview, and observation of Plaintiff via mental status exam. Tr. 386. While Dr. Cline did not review Plaintiff's medical records, her opinion is consistent with the record as a whole especially in early 2016, as Plaintiff was just beginning to seek and engage with treatment. The evidence available at that time reveals Plaintiff consistently

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

reported and presented with psychotic symptoms including audio and visual hallucinations and was frequently observed responding to internal stimuli. Tr. 387-38, 393, 399, 417-19.

The ALJ also failed to cite to any longitudinal evidence that was unsupportive of Dr. Cline's 2016 opinion. Tr. 45. Instead, the ALJ concluded that all Plaintiff's self-reporting was unreliable because Plaintiff reported alcohol use to another evaluator but did not report recent alcohol use to Dr. Cline. Tr. 45, 345. In fact, the ALJ consistently picks out one or two sentences from these early 2016 evaluations and uses it out of context to discredit Plaintiff. Tr. 387-38, 393, 399, 417-19. The ALJ concluded Plaintiff's reporting was unreliable, and therefore untruthful, without addressing abnormal mental status exam findings, or the concern expressed by mental health providers during early 2016 visits that Plaintiff was unable to report accurately due to psychosis. *Id.* While the ALJ infers malingering, there is no evidence in this record that any provider has found or suggested malingering. Dr. Cline also administered testing for effort at each of her exams. Tr. 383, 1105. In 2016 Dr. Cline reported "her score of 12 indicates an above average level of effort and cooperation with the task and decreases the likelihood that she is malingering" Tr. 383. In 2017 she reported "her score of 15 indicates an excellent level of effort and cooperation with the task and diminished the likelihood that she is malingering." Tr. 1105.

As for the ALJ's conclusion that Dr. Cline "provides no rational basis for the marked limitations particularly in light of claimant's activities of daily living, which includes tending to her personal care needs and managing her finances," this is also not a specific and legitimate reason to reject Dr. Cline's 2016 opinion. The ALJ gave no examples of personal care needs or what finances Plaintiff managed. Tr. 45. Absent specific details simply listing general categories of activities is not substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

While some portions of Plaintiff's mental status exam were within normal limits, the ALJ did not discuss abnormal findings. Dr. Cline observed Plaintiff's speech was within normal limits "at first, but occasionally lapsed into disorganized, circumstantial speech." Tr. 385. Dr. Cline also observed Plaintiff's perception was not within normal limits, reporting that:

> When asked about AH/VH [auditory and visual hallucinations] claimant stated "I hear voices that are not there and they tell me like what am I doing and I hear crying sounds and they get into deep details with me, like what money I have and what's my social and they try to like confuse my thoughts [sic]. They say that my name is Isaac, and it's Elizabeth, but I changed it from Isaac." He notes that he recently started on medication which has helped decrease these to a certain extent. He described these as "outside my head" and notes that they got louder when he wasn't happy. He has been experiencing this for the last five years. He notes that he has also had VH. He denied any ongoing or historical paranoia. He does endorse some delusional thought processes in the form of "I can eat glitter and throw it out as magic, and I pick up rocks and I swallow them because I feel like it's magic."

Tr. 386

Dr. Cline observed Plaintiff's abstract thought, insight, and judgment were also outside of normal limits, and that Plaintiff made some errors on memory testing. Tr. 386. The ALJ does not discuss these abnormal findings and does not discuss similar findings throughout the record, focusing instead on times Plaintiff self-reported she was doing well. For example, under the section of the ALJ's decision titled "The longitudinal record shows overall improvement in symptoms and function with medication," the first bullet point is a quote from Plaintiff during Dr. Cline's 2016 evaluation, noting "on mental status exam in March 2016, [plaintiff] described her mood as "a 10, and 10 is good. I'm always in a good mood." Tr. 43.

The ALJ failed to offer specific and legitimate reasons for discounting Dr. Cline's 2016 opinion and failed to offer any evidence this opinion was based largely on Plaintiff's reports, as opposed to Dr. Cline's professional judgment and objective observations.

        *i.*    *Dr. Cline's 2017 evaluation*

Dr. Cline evaluated Plaintiff for a second time on December 20, 2017. Tr. 1104-12. Dr. Cline indicated she reviewed her previous assessment from 2016. Tr. 1104. Dr. Cline again administered a clinical interview and mental status exam and diagnosed Plaintiff with unspecified schizophrenia spectrum and other psychotic disorder (r/o substance induced). Tr. 1106. She explained "although it has now been two years since her last use of substances it can take up to five years for the brain to fully recover, or recover as much as it is going to," and noted Plaintiff continued to "endorse ongoing AH, VH and paranoia, as well as some potential delusional thought processes despite being medicated at this time." Tr. 1104. Dr. Cline opined Plaintiff was overall moderately impaired and had multiple mild and moderate limitations in specific areas of work-related functioning. Tr. 1106-07. She opined Plaintiff:

> may be as stable as she is going to be, and may be able to pursue some form of part-time sheltered employment or education at this time, such as through the Goodwill. Ongoing mental health treatment is recommended, but can be concurrent with employment.

Tr. 1107.

The ALJ gave partial weight to Dr. Cline's 2017 opinion. Tr. 47. The ALJ noted Dr. Cline "assessed mild to moderate limitation in cognitive and social functioning for an estimated 6-9 month period" and also noted Dr. Cline's explanation that Plaintiff was only two years removed from the substance abuse at that time and that it typically took "up to five years for the brain to recover." *Id.*

The ALJ then listed the portions of Dr. Cline's mental status exam that were within normal limits. Tr. 47. The ALJ concluded that there was no evidence to support a need for sheltered employment, because plaintiff had never hurt anyone, the record showed Plaintiff's symptoms were mostly managed by medication, and Plaintiff has not tried to work since 2000. Tr. 47.

Plaintiff argues that Dr. Cline's limitation to a part-time sheltered work environment was well supported by Plaintiff's report of symptoms and her performance on mental status exams, and that the limitation to part-time sheltered employment is consistent with other opinion evidence and Plaintiff's reliance on her mother and other family members. ECF No. 18 at 13-16.

Defendant argues the ALJ reasonably rejected Dr. Cline's 2017 opinion because it conflicts with her 2016 opinion and Plaintiff's symptoms are mostly managed by medication. ECF. No. 19 at 8.

The Court finds the ALJ failed to offer specific and legitimate reasons for discounting Dr. Cline's 2017 opinion that Plaintiff "may be as stable as she is going to be, and may be able to pursue some form of part-time sheltered employment or education at this time."

First, the ALJ fails to mention Dr. Cline's limitation to part-time work. Tr. 47. Additionally, the ALJ's assertion Plaintiff had not tried to work since 2000 is incorrect, as Plaintiff was 11 years old in 2000.[6] Plaintiff did testify that he had not tried to hurt anyone in the past 5 years. Tr. 1509. However, the ALJ did not consider Plaintiff's additional testimony that "I hear voices, and they tell me … to do things and I just wouldn't want to hurt someone or accidentally hurt myself." Tr. 1509. The ALJ did not discuss evidence of concern by family members that

---

[6] This appears to be a typo in the 2019 hearing transcript, however, the ALJ used this incorrect information two places in the 2019 decision. Tr. 40, 47, 1501.

Plaintiff is easily distracted by mental health symptoms and might accidentally hurt herself or someone else. Tr. 952, 1345.

As for the ALJ's conclusion that Plaintiff's symptoms are mostly managed by medication, the ALJ's decision focused on Plaintiff's self-reports of doing better. However, Plaintiff's self-reports are often inconsistent with objective findings. It is an error to single out a few or temporary periods of well-being from a sustained period of impairment and rely on those instances to discredit Plaintiff. *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). For example, the ALJ noted in Plaintiff's March 2016 report she was "feeling better and able to concentrate more" and that while she "indicated she was seeing things," she was still able to go to school with her sister and hang out while her sister was in class. Tr. 43. However, there is no mention by the ALJ that in the same appointment she also reports she is seeing "the devil and ghosts," and that her provider observed she presented with disorganized thoughts and was more depressed than the last session. Tr. 445. The ALJ noted how in June 2016 Plaintiff was functioning at a higher level, had a brighter affect, and reported breakthrough hallucinations "once per day" that were not bothersome. Tr. 43. However, at the same medication management appointment in June 2016, her provider documented receiving an email from Plaintiff's therapist, who reported "a rapid decline in . . . functioning, future thinking, goal setting and hygiene since transitioning onto Abilify." She indicated Plaintiff was describing "bizarre" thoughts around "celebrities and magic once again." Tr. 419. The ALJ's conclusion Plaintiff's symptoms are mostly managed by medication is not supported by substantial evidence.

The ALJ failed to offer specific and legitimate reasons for discounting Dr. Cline's opinions, particularly the 2017 opinion limiting Plaintiff to part-time sheltered work. The ALJ failed to offer any evidence that Dr. Cline's opinions

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

were based on Plaintiff's reports, as opposed to Dr. Cline's professional judgment and objective observations.

On remand, the ALJ will reconsider Dr. Cline's opinions.

b.  *Ms. Rumsey*

Plaintiff's treating therapist Brittany Rumsey, MSW, provided a statement on Plaintiff's behalf on July 19, 2017. Tr. 883-4. She reported she had worked with Plaintiff since February 2016 in "case management and individual therapy for psychosis." Tr. 883. She reported Plaintiff struggled with depression, "which made voices and visual hallucinations more intense and less tolerable," and that Plaintiff "presents with delusional thinking and disorganized thoughts" *Id*. She noted Plaintiff's past diagnoses including social phobia and amphetamine use disorder in 2009, and her diagnosis in 2016 of other specified schizophrenia. *Id*.

She reported that "since June of 2016, Elisabeth has tried various medications with little relief of her voices, visual hallucinations, and other symptoms" *Id*. Ms. Rumsey reported "at this time [Plaintiff] has complied with mental health treatment" but her "mental status is unpredictable as she may come in reporting an increase in destressing symptoms and appear depressed and other days reports doing well, but continues to have difficulty focusing on specific tasks." *Id*. She reported "she often has a difficult time communicating and understanding questions asked" and "is disorganized in her thoughts." *Id*. Ms. Rumsey opined while "return to work has been discussed, [it] is not recommended at this time as she has not shown the ability to concentrate, understand instructions, and communicate clearly." *Id*.

The ALJ assigned Ms. Rumsey's opinion little weight because it was inconsistent with the record, treatment notes showed improvement with medication, and mental status exams showed intact concentration. Tr. 46. The ALJ noted Plaintiff was independent in "her personal [sic], performing chores, and preparing meals, thus demonstrating the ability to concentrate and understand,"

and that she "communicates her needs to providers including requesting hormone treatment." *Id.* The ALJ concluded "Ms. Rumsey makes no mention of [Plaintiff's] ongoing alcohol or other drug use, which undercuts the reliability of her opinion." *Id.*

Plaintiff argues the ALJ erred in giving the opinion of Ms. Rumsey little weight because Ms. Rumsey is a treating provider, her opinion is consistent with her own treatment records and other medical opinions, and the ALJ ignored Plaintiff's testimony about difficulty sustaining activity. ECF No. 18 at 10. Plaintiff argues the ability to request treatment does not demonstrate an ability to communicate effectively full-time in a workplace, and that the ALJ mischaracterizes the medical evidence because there is no indication of ongoing alcohol or drug use after August 2016. ECF No. 18 at 11-13.

Defendant argues the ALJ reasonably gave Ms. Rumsey less weight because she is not a treating or acceptable medical source, and that records from her own treatment history, as well as from other providers, contradict her reports that Plaintiff's symptoms were unresponsive to treatment. ECF No. 19 at 6.

The Court finds the ALJ erred by failing to provide germane reasons to reject Ms. Rumsey's opinion. A conflict with treatment notes, or the consistency with the medical record as a whole are germane reasons to reject an "other source" opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, however, substantial evidence does not support the ALJ's conclusion that Ms. Rumsey's opinion was inconsistent with treatment notes or the record as a whole.

As explained in the discussion of Dr. Cline's opinion *supra*, Plaintiff's mental health symptoms are not managed with medication. The ALJ also did not reference specific examples from Ms. Rumsey's treatment notes or the notes of other providers that conflicted with Ms. Rumsey's opinion. Tr. 46. The only support the ALJ provided here was the statement "mental status exams show intact concentration." *Id.* Elsewhere in the decision, the ALJ did cite to seven places in

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

the record where Plaintiff was found to have intact, fair, or adequate concentration between 2016 and 2019. Tr. 39, 42, 44, 47, 577, 588, 749, 895-96, 923, 1108. Two of these cites, however, are to the same 2017 Dr. Cline exam discussed *supra*. Another mental status exam the ALJ cited as evidence of improvement because it showed intact concentration took place during Plaintiff's involuntary psychiatric hospitalization in June 2016. Tr. 895. Other findings that day included impaired memory, "other: can hear my thoughts," and Plaintiff's endorsement of auditory and visual hallucinations. *Id.* The ALJ selectively identified evidence in the record showing normal findings, but did not address abnormal findings within the same examination report and others that show more mixed results. Substantial evidence does not support the ALJ's conclusion that Ms. Rumsey's opinion was inconsistent with treatment notes or the record as a whole.

The ALJ's conclusion Plaintiff was independent in performing chores and preparing meals is also not supported by substantial evidence. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, however, in relying on Plaintiff's reported activities to reject Ms. Rumsey's opinion, the ALJ overstated Plaintiff's activities. The ALJ did not discuss Plaintiff's 2019 testimony that she could not clean her room without becoming distracted and stopping to rest. Tr. 1513. Evidence shows Plaintiff's family did not want her to cook due to symptoms including command hallucinations. Tr. 375, 952, 1345. Ms. Rumsey's treatment notes from an appointment in June 2017 showed plaintiff reported "her voices … told her to put her hand in boiling water she had on the stove." Tr. 952. In a January 2018 visit with Ms. Rumsey, Plaintiff's mother reported Plaintiff had been approved for "31 care provider hours that mom will manage for cooking, transportation, reminder of hygiene." Tr. 1345. Ms. Rumsey's treatment records indicate "there is concern with her cooking as the voices can be distracting and she doesn't want to hurt herself." *Id.*

The ALJ's conclusion that Ms. Rumsey's opinion is unreliable because she did not mention Plaintiff's ongoing alcohol or other drug use is also not supported by substantial evidence. Tr. 46. There is no evidence in the record of any substance use after August 2016, at the latest.[7] Tr. 908-912. Along with lack of any medical evidence to support ongoing alcohol or drug use, at an ER visit in June 2017 Plaintiff's family reported she was one year sober, she reported she was three years sober in February 2019, and she lived in a drug and alcohol-free housing community with her mother, where she was regularly tested for substance use. Tr. 355, 965, 1229.

    The ALJ failed to offer germane reasons for discounting Ms. Rumsey's opinion. As this claim is being remanded for further proceedings, the ALJ shall reconsider Ms. Rumsey's opinion and all medical opinion evidence in completing the five-step process.

---

[7] There appears to be an error in the medical record. Tr. 908-912. Here, the date of a June 28, 2016, psychiatric evaluation by Joseph Sutton, PA-C, is listed as "08/28/2017" in the header of each page of the document. *Id.* Mr. Sutton signed and dated the last page of this evaluation electronically, on June 30, 2016, but the header shows the "8/28" evaluation date on each page. *Id.* Mr. Sutton's notes clearly describe a specific episode of increased psychosis, which culminated in Plaintiff's involuntary hospitalization June 28-July 1, 2016. The order for admission to the inpatient facility on that date is also signed by Mr. Sutton. Tr. 455, 458-59. The date of this evaluation is important because it is the last time any ongoing substance use is reported in the record. The ALJ relied on the date of the document to discredit Plaintiff because she appeared to reference alcohol use again in August 2016. However, the actual evaluation was signed by Plaintiff's provider two months earlier in June 2016.

**2. Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting her subjective complaints. ECF No. 18 at 16.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 41. The ALJ offered the following additional reasons for disregarding Plaintiff's subjective complaints: Plaintiff's complaints were out of proportion to the objective medical evidence of record; Plaintiff's substance use/abuse suggests that her symptoms are at least in part substance induced or increased with use; she typically responds to medication management and reports improved functioning despite voices; and the longitudinal record shows overall improvement in symptoms and functioning with medications. Tr. 41-45.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

1    Plaintiff argues the ALJ failed to provide clear and convincing reasons for
2 rejecting Plaintiff's symptom testimony because the ALJ simply recited the
3 medical evidence in support of his RFC, erroneously rejected symptom testimony
4 for lack of objective medical evidence, the record does not support the ALJ's
5 conclusion that Plaintiff improved to the point of being able to work, no doctor had
6 opined Plaintiff would be able to function effectively in a workplace after full
7 review of the medical record, and Plaintiff's remote history of drug use is not a
8 reason to reject her symptom testimony. ECF No. 18 at 16-19. Defendant argues
9 the ALJ reasonably weighed Plaintiff's allegations because the longitudinal record
10 shows overall improvement in symptoms and functioning with medication. ECF
11 No. 19 at 2-4.
12    The ALJ's evaluation of Plaintiff's symptom claims and the resulting
13 limitations largely relies on the ALJ's assessment of the medical evidence. Having
14 determined a remand is necessary to readdress the medical opinions of Dr. Cline
15 and Ms. Rumsey, any reevaluation must necessarily entail reassessment of
16 Plaintiff's subjective symptom claims. Thus, the Court need not reach this issue
17 and on remand the ALJ must also carefully reevaluate Plaintiff's subjective
18 complaints in the context of the entire record.

## CONCLUSION

20    Plaintiff argues the decision should be reversed and remanded for the
21 payment of benefits. The Court has the discretion to remand the case for additional
22 evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292
23 (9th Cir. 1996). The Court may award benefits if the record is fully developed and
24 further administrative proceedings would serve no useful purpose. *Id*. Remand is
25 appropriate when additional administrative proceedings could remedy defects.
26 *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court
27 finds that further development is necessary for a proper determination.

The ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's subjective complaints and all the medical evidence of record, making findings on each of the five steps of the sequential evaluation process. The ALJ shall obtain supplemental testimony from a medical expert and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED October 6, 2021.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE